UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK THOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>CASSIA COUNTY, JAY M. HEWARD, and MICHAEL AKERS,<br><br>    Defendants. | Case No. 4:17-cv-00256-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion for Protective Order. Dkt. 15. Defendants ask this Court to issue a protective order preventing Plaintiff Derek Thomas from discovering the personal financial information of the two individual Defendants in this case: Cassia County Sheriff Jay Heward and Deputy Michael Akers. Having reviewed the record and briefs, the Court finds that the parties have adequately presented the facts and legal arguments. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to DENY the Motion.

## II. BACKGROUND

In this case, Thomas claims that Deputy Akers violated his First, Second, Fourth, Fifth, and Fourteenth Amendment rights when he held Thomas "in contempt" after Thomas "peacefully and in a lawful manner exercised his rights guaranteed by the Second Amendment and Idaho law to openly carry a sidearm on his own property."[1] Dkt. 1, at 1–3. Specifically, Thomas alleges that on December 31, 2016, Akers, "falsely and without a warrant or probable cause, arrested and imprisoned [him] for four (4) days," and in doing so "utilized unreasonable and excessive force." *Id.* at 3. Akers stated that he arrested Thomas that day for his participation in a "hit and run" "involving a 15-year-old boy with a mental disability" riding a "motorized bicycle." *Id.* Thomas alleges that Akers "knowingly and deliberately falsified an affidavit" to "manufacture probable cause" and support "false felony charges of aggravated battery with a deadly weapon." *Id.* at 4. Thomas contends that Akers took all these actions to retaliate against him, punish him for exercising his Second Amendment rights, and ultimately take his firearms away from him. *Id.* at 4–5.

As to the other Defendants, Thomas asserts that "Sheriff Heward failed to properly train, supervise and control Akers," and actively "approved, affirmed and ratified Akers' misconduct." *Id.* at 5. Thomas also asserts that "Cassia County had an official policy or custom permitting its law enforcement officers to make warrantless arrests without probable cause" and "to make false or unsupported criminal allegations, charges and

---

[1] These claims are actionable under 42 U.S.C. § 1983.

prosecutions against citizens in order to punish them for exercising their First Amendment rights." *Id.*

Among other things, Thomas has requested an award of punitive damages. To support an award for punitive damages, Thomas has served Defendants with interrogatories and requests for production asking Defendants to produce information about the individual Defendants' personal finances, such as pay stubs, tax returns, W-2s, and bank, investment, credit card, and credit union statements. Defendants object to these requests. *See* Dkt. 17-1. The Court held an informal discovery dispute conference on this objection. After the parties were unable to reach a compromise at that conference, Defendants filed the pending Motion for Protective Order.

## III. LEGAL STANDARD

Generally, if no claim of privilege applies, a party can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

"[P]re-trial discovery is ordinarily 'accorded a broad and liberal treatment,'" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). "Under Rule 26, however, '[t]he court may, for good cause, issue an order to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (quoting Fed. R. Civ. P. 26(c)(1)). "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Id.* (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003)).

## IV. ANALYSIS

Thomas argues that the individual Defendants' financial information is discoverable because this information is relevant to his request for punitive damages.[2] The Court, generally, agrees.

"Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981). Accordingly, in § 1983 cases, courts permit juries "to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources."[3] *Id.* at 269. This type of award

---

[2] Thomas also argues that the Court should deny this Motion because Defendants have failed to comply with Local Rule 37.2, which requires a "memorandum in support of a Rule 26 and 37 discovery motion [to] provide verbatim each disputed interrogatory, request, answer, response, or objection that underlies the motion." Nevertheless, Thomas agrees that denying this Motion on Rule 37.2 would not serve Rule 1 of the Federal Rules of Civil Procedure or the Court's preference for deciding issues on the merits. Therefore, the Court declines to address whether Defendants have complied with Rule 37.2.

[3] The parties agree that Thomas cannot assert a claim for punitive damages against Cassia County. The Supreme Court has clarified that "[d]amages awarded for *punitive* purposes . . . are not sensibly assessed against the governmental entity itself." *City of Newport*, 453 U.S. at 267–

"directly advances the public's interest in preventing repeated constitutional deprivations." *Id.* Because "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded," *id.* at 270 & n.31 (citing Restatement (Second) of Torts § 908(2) (1979); D. Dobbs, Law of Remedies § 3.9, pp. 218–219 (1973)), an individual § 1983 defendant's personal financial information is relevant, and thus discoverable, *McCoy v. Holguin*, No. 1:15-cv-00768-DAD-MJS, 2017 WL 4037944, at *6 (E.D. Cal. Sept. 13, 2017).

"The Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged." *E.E.O.C. v. Cal. Psychiatric Transitions*, 258 F.R.D. 391, 394 (E.D. Cal. 2009). However, "the majority of federal courts" have held that "a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial without making a prima facie showing that he is entitled to recover such damages." *Id.* at 394–95 (citation omitted) (collecting cases). A minority of federal courts have required plaintiffs to "first allege specific facts sufficient to support a claim for punitive damages" before obtaining this information. *Id.* at 395 (collecting cases). This Court has not yet ruled on this issue. At this point, the Court finds it appropriate to follow the approach taken by the majority of federal courts. This approach accords with the "broad and liberal treatment" this Court must give pre-trial discovery requests. *See Shoen*, 5 F.3d at 1292. Moreover,

---

69. This is because such awards "are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill" and do not have any direct deterrent effect.

Defendants carry the burden on this Motion and they have not presented any binding or persuasive legal authority to override this approach.

Nevertheless, the Court's analysis does not stop there. Defendants have asserted several additional reasons why the Court should issue a protective order: (a) "Sheriff Heward cannot be liable for punitive damages for liability under *respondeat superior*;" and (b) "alternatively, the Defendants' personal financial information should be protected at least until the Court has had opportunity to rule on qualified immunity."[4] Dkt. 15-1, at 4.

### A. Whether Sheriff Heward can be liable for punitive damages

Defendants first argue that the Court should not force Sheriff Heward to disclose his financial information "because he is being sued in his official capacity as the Sheriff of Cassia County, and cannot be subject to punitive damages through a theory of respondeat superior." *Id.* It is true that supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, "[a] defendant may be held liable as a supervisor under § 1983 [only] 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

---

[4] Defendants also argue that the Court should grant the Motion for Protective Order because it is not likely that Thomas will ultimately succeed on his request for punitive damages. This slight reframing of Defendants' primary argument is, again, unsuccessful. Far short of showing a likelihood of success on his request, Thomas need not even allege a prima facie case of entitlement to punitive damages.

MEMORANDUM DECISION AND ORDER - 6

supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). Thomas maintains that he is suing Sheriff Heward in his individual capacity and not under a respondeat superior theory.

If Thomas sued Sheriff Heward under a respondeat superior theory, he would not have stated a claim upon which this Court could grant relief. This is not the proper time or form for the Court to determine whether Thomas has adequately alleged a claim of supervisory liability under § 1983 against Sheriff Heward. Therefore, for the purpose of the pending Motion, the Court assumes he has. In other words, the Court assumes Thomas sues Sheriff Heward in his individual capacity. As explained previously, an individual defendant can be held liable for punitive damages, and the plaintiff need not make a prima facie showing that he is entitled to recover punitive damages in order to discover an individual's personal financial information. Accordingly, the Court declines to grant the Motion for Protective Order on this ground.

### B. Whether Defendants' personal financial information should be protected until the Court has ruled on qualified immunity

Finally, Defendants argue the Court should not allow the discovery of Heward's and Akers' financial information until after it has determined whether they are entitled to qualified immunity. Defendants assert this is required because qualified immunity is intended to allow government officials to avoid "the burdens of broad-reaching discovery." Dkt. 15-1, at 7 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Defendants improperly construe this doctrine. It is still the government official's burden

to raise qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Indeed, the *Mitchell* court clarified that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." 472 U.S. at 526. Thus, if Defendants wanted to avoid the burdens of discovery (including disclosure of relevant financial information), they should have raised qualified immunity in a motion to dismiss. Such a motion would have determined, accepting the facts as alleged by Thomas, whether Defendants' conduct violated a "clearly established" constitutional right. *Nampa Classical Acad. v. Goesling*, 714 F. Supp. 2d 1079, 1090 (D. Idaho 2010), *aff'd*, 447 F. App'x 776 (9th Cir. 2011). Defendants chose not to and they cannot now use this doctrine as a shield to avoid disclosing relevant information.[5]

The Court acknowledges that it has previously stayed discovery pending the resolution of qualified immunity. However, typically the stay is in effect only until the Court resolves qualified immunity at the motion to dismiss stage. *See Saetrum v. Raney*, No. CIV. 1:13-425 WBS, 2014 WL 2155210, at *4 (D. Idaho May 22, 2014) (staying discovery until after plaintiffs file a second amended complaint, defendants file a second motion to dismiss on qualified immunity grounds, and the Court resolves that motion). Indeed, as the Supreme Court has explained, if a defendant does not prevail on a motion to dismiss based on qualified immunity, "discovery may be necessary before

---

[5] The Court notes that Defendants also chose not to accept a compromise proposed at an informal discovery dispute conference in which only Akers would be required to produce his personal financial information.

[defendant's] motion for summary judgment on qualified immunity grounds can be resolved." *Anderson v. Creighton*, 486 U.S. 635, 646 n.6 (1987). Therefore, the Court finds such a stay, or protective order barring discovery on a particular issue, is not appropriate at this time.

Despite the Court's decision to deny the Motion, the Court acknowledges that some sort of order protecting Defendants' personal financial information from disclosure (such as an attorneys' eyes only order), is appropriate. Accordingly, the Court will give the parties leave to stipulate to such a protective order.

## V. CONCLUSION

The Court hereby ORDERS:

1. Defendants' Motion for a Protective Order (Dkt. 15) is DENIED.
2. The parties shall have 10 days from the issuance of this Order to submit a stipulated protective order that will protect the individual Defendants' personal financial information from disclosure.

DATED: May 15, 2018

David C. Nye
U.S. District Court Judge