# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK THOMAS,<br><br>  Plaintiff,<br><br>  v.<br><br>CASSIA COUNTY, IDAHO, a political subdivision of the State of Idaho, JAY M. HEWARD, and MICHAEL AKERS,<br><br>  Defendants. | Case No. 4:17-cv-00256-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court is Plaintiff Derek Thomas' ("Thomas") Motion for Reconsideration (Dkt. 71); Motion for Entry of Judgment under Rule 54(b) (Dkt. 72); Motion for Discovery (Dkt. 84); and Motion Requesting Oral Argument (Dkt. 85). Defendant Michael Akers' ("Akers") has also filed a Motion for Reconsideration (Dkt. 82).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Accordingly, Thomas' Motion Requesting Oral Argument (Dkt. 85) is DENIED.

For the reasons outlined below, the Court also finds good cause to GRANT in PART

and DENY in PART Thomas' Motion for Reconsideration (Dkt. 71), DENY Thomas' Motion for Entry of Judgment (Dkt. 72), STAY Akers' Motion for Reconsideration (Dkt. 82) for ninety days, and GRANT Thomas' Motion for Discovery (Dkt. 84).

## II. BACKGROUND

The background of this case is set forth in the Court's prior order (Dkt 70). The Court incorporates that background by reference here. Following the Court's order on Defendants' Motions for Summary Judgment (Dkt. 70), Thomas filed a Motion for Reconsideration (Dkt. 71), and, alternatively, a Motion for Entry of Judgment under Rule 54(b) (Dkt. 72). Shortly thereafter, Akers filed a Motion for Reconsideration in light of the Supreme Court's decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019).

## III. LEGAL STANDARD

Thomas asks the Court to reconsider its decision under Federal Rule of Civil Procedure 59(e). This Rule does "permit[] a district court to reconsider and amend a previous order," but the Ninth Circuit instructs that the Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). "[T]here are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, No. 1:16-CV-00190-CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N.*

*Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)). "A losing party cannot use a Rule 59(e) motion to relitigate old matters or to raise arguments that could have been raised before the entry of judgment." *Id.* (citing *Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

This Court has previously explained:

> A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D. Cal. 1981) (Schwartzer, J.).

> The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

*Lancaster v. Kordsiemon*, 1:15-CV-00239-BLW, 2016 WL 6471428, at *1 (D. Idaho Oct. 31, 2016).

"As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551,

553 (5th Cir. 1981)).

# IV. ANALYSIS

## A. **Motions to Reconsider**

In their competing motions to reconsider, Thomas and Akers ask the Court to reconsider numerous holdings in its prior order. The Court considers each request in turn:

*1. Finding that a reasonable officer could have found probable cause existed to arrest Thomas*

First, Thomas claims that the Court committed error when it held that a reasonable officer could have found probable cause existed to arrest Thomas. Thomas accuses the Court of "neglect[ing] a profusion of exculpatory evidence negating probable cause, as well as evidence of fabrication and mischaracterization of evidence by defendant Akers." Dkt. 71, at 6. This is incorrect. While the Court's order may not have specifically discussed everything it considered in reaching its conclusions, the Court considered the entire record, including every theory, argument, and piece of potentially exculpatory evidence presented by Thomas. Simply, reaching a different conclusion than Thomas would have liked is not error.

Thomas raises a number of items he contends the Court ignored or disregarded. *See* Dkt. 71-1, at 3-9. As an initial matter, the Court notes that in reaching its decision on the Motions for Summary Judgment, it considered every one of these theories and pieces of evidence. Regardless, in an effort to be as clear as possible, the Court will briefly discuss a few of the items Thomas specifically raises in his Motion to Reconsider.

First, Thomas contends that the Court ignored inconsistencies between Akers'

probable cause affidavit and S.K.'s deposition testimony—which he contends serve as evidence that Akers falsified his probable cause affidavit. Specifically, Thomas states that "Akers attributed the following identical, verbatim recitations of the following events from both S.K. and Povlsen: "Mr. Thomas' blue Chevrolet pickup truck accelerat[ed] away to the east at 45-50 MPH." Dkt. 71-1, at 4. Thomas claims that later, "against his own interests S.K. denied under oath that he ever said this to Akers." *Id.*

This, however, misconstrues S.K.'s later testimony. At his deposition, S.K. was asked whether he made a statement to Deputy Akers regarding Thomas' speed when leaving the scene of the accident. S.K. said "I told [Akers] he went from 35 to 45." Dkt. 52-12, at 27. Shortly thereafter, S.K. clarified that he may have given Akers an estimation up to 50 miles per hour. *Id.* at 28. This is the exact portion of S.K.'s deposition that Thomas cites in support of his contention that S.K. "denied under oath that he ever said this to Akers." Construing this as a denial of S.K.'s prior statement is a mischaracterization of his deposition testimony and does nothing to persuade the Court.

Similarly, Thomas contends that Akers falsified his probable cause affidavit by attributing a statement to S.K.'s grandfather that he never made. Specifically, in his probable cause affidavit, Akers wrote that Povlsen told him he was inside his house when he "heard the sound of a vehicle rapidly accelerating" and then stepped outside and "saw a blue Chevrolet pickup truck accelerate to the east at 45-50 MPH." Dkt. 52-21, at 2. Thomas contends that Povlsen actually said he "didn't see anything." Dkt. 71-1, at 5.

Thomas bases this theory on a statement Povlsen made to another officer (Officer Higley) a few days after his initial interview with Akers. Office Higley informed Povlsen

that he was there to talk to him about the incident, and Povlsen replied "I actually told the officer that come out there the first time, you know, I actually didn't see anything." Dkt. 52-20, at 2. Later, he told Officer Higley "the actual incident I did not see." *Id.* at 6.

However, in his deposition testimony, Povlsen was asked about this statement. Specifically, Plaintiff's Counsel said: "[W]hen [Officer Higley] came out the first time, you told him that you didn't see anything." Dkt. 52-14, at 6. Povlsen replied "I did not see the accident." *Id.* Plaintiff's Counsel sought clarification from Povlsen regarding the meaning of that statement, to which Povlsen replied "I didn't see the accident—the impact." *Id.*

Nothing in these subsequent statements are inconsistent with Povlsen's initial statement to Akers that he "heard the sound of a vehicle rapidly accelerating" and then stepped outside and "saw a blue Chevrolet pickup truck accelerate to the east at 45-50 MPH." Dkt. 52-21, at 2. In fact, at his deposition, Pavlsen once again affirmed that he saw Thomas' truck driving away from the scene of the alleged incident. The Court is unsure why Thomas continues to mischaracterize these statements, but it considered these theories in reaching its decision on the Motions for Summary Judgment and found them unpersuasive.

Next, Thomas argues that Akers ignored "substantial evidence negating any suggestion that [S.K.'s damages tire and slime on S.K.'s clothes] was caused by a collision from behind, much less an intentional one." Dkt. 71, at 8. Thomas raises a number of concerns in this area that the Court fully considered in reaching its prior decision. The Court also carefully reviewed the photographs of S.K., his bike, and Thomas' truck that

Akers took the day of the incident underlying this case. The photographs clearly show green tire slim sprayed on S.K.'s clothes (Dkt. 52-6, at 1) and on his bike (Dkt. 52-6, at 3; Dkt. 52-7, at 1-3). They also show an area of his tire that had sustained damage (Dkt. 52-7, at 2). While the Court recognizes that this evidence presents some oddities (such as S.K.'s tire holding air after the alleged incident and the lack of slime on Thomas' truck), there are reasonable explanations for these oddities besides S.K. fabricating the incident. Ultimately, the Court considered all this evidence and Thomas' various theories and held that a reasonable officer in Akers' position could have found probable cause to arrest.

That said, Thomas correctly highlights poor phrasing used by the Court in its prior order. In discussing the lack of slime on Thomas' truck, the Court said "[t]his oddity, standing alone, is not enough to overcome a finding of probable cause." Dkt. 70, at 10.

Based upon this sentence, Thomas contends that the Court applied an erroneous legal standard in determining whether probable cause existed. As Thomas correctly argues, probable cause determinations are based upon the "totality of the circumstances." The Court understands Thomas' concern, and agrees that the wording of this sentence could potentially cause confusion. However, the Court also notes that—despite its poor choice of words—it still applied the correct legal standard. This is clear when the Court's discussion of probable cause is read in its entirety.

For example, in discussing the applicable legal standard, the Court said that it must look to the "totality of the circumstances." Dkt. 70, at 7. At the outset of its analysis, the Court stated that "[i]n viewing the totality of circumstances known to Akers at the time of the arrest, a prudent officer could have believed Thomas was guilty of leaving the scene of

an accident." *Id.* at 9. Finally, when summarizing its decision on the matter, the Court said "[i]n sum, the Court finds that—based upon the information known to Akers at the time— a reasonable officer could have found probable cause to arrest Thomas for hit and run." *Id.* at 12.

As these statements demonstrate (and as the Court's analysis–when viewed it its entirety–makes clear), the Court took into account all of the evidence, including potentially exculpatory evidence, when determining whether a reasonable officer could have found probable cause to arrest Thomas. Thomas' Motion for Reconsideration isolates a poorly worded sentence that the Court agrees should have been more carefully crafted. That said, the Court's analysis clearly applied the correct legal standard, and the Court stands by its prior decision regarding probable cause to arrest.

Thomas highlights another sentence that the Court is less concerned about. When discussing concerns over S.K.'s credibility, the Court said "[w]hile Akers was at least somewhat familiar with S.K. and Thomas prior to the events in question—and may have even known of their strained relationship—that does not automatically delegitimize his finding of probable cause." Dkt. 70, at 10-11.

In response to this statement, Thomas states that he "has not made such an argument and need not establish this. It is just one brick among *many others* in a wall, which were ignored by Akers and not considered by the Court, clearly establishing a genuine issue of material fact." Dkt. 71, at 13 (emphasis in original). However, the very next sentence of the Court's order states: "S.K.'s reliability was simply one relevant consideration in Akers' investigation." Dkt. 70, at 11. Clearly, the Court did not ignore concerns over S.K.'s

credibility and considered those concerns along with all of the other "bricks" that made up the totality of the circumstances known to Akers at the time of the arrest. However, the Court reached a different conclusion than Thomas advocated for. While that is undoubtably disappointing for Thomas, it is not error.

The Court understands that Akers' statements made after the arrest are concerning and cast doubt over his motivations. Yet the Court has a duty to apply the law fairly and objectively. Unfortunately for Thomas, the law does not allow the Court to consider Akers' subjective intent when determining whether probable cause existed. Based upon the objective evidence that makes up the totality of the circumstances (and after thorough consideration of any potentially exculpatory evidence known or not pursued by Akers), the Court held that a reasonable officer in Akers' position could have found probable cause to arrest him. The Court stands by its decision on this matter.

As such, Thomas' Motion for Reconsideration is DENIED in PART as it relates to the Court's finding that a reasonable officer in Akers' position could have found probable cause to arrest.

2. *Failure to Consider whether probable cause existed to charge Thomas with Aggravated Assault*

Next, Thomas contends that even if there was probable cause to arrest Thomas for misdemeanor hit and run, the Court should have considered whether probable cause existed for the crime of aggravated assault, since Thomas was ultimately charged with committing that crime. Thomas points out that in this case "Akers concedes that although he initially

arrested Mr. Thomas for misdemeanor hit-and-run, he booked and held Mr. Thomas in jail solely on felony charges of aggravated assault." Dkt. 71-1, at 12.

Thomas claims the Court committed error by granting summary judgment on his malicious prosecution claim, because the Court reached this conclusion as a result of its finding that probable cause existed to arrest Thomas. The Court's prior order states:

> Since the Court has now determined that Akers had probable cause to arrest Thomas, Thomas cannot establish the required elements of malicious prosecution. Accordingly, the Court GRANTS summary judgment on this claim. *See Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008) ("[I]t is necessary, if not sufficient, that a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution show the absence of probable cause.").

Dkt. 70, at 17.

Upon review of relevant caselaw, the Court agrees with Thomas that simply finding probable cause existed to arrest him did not automatically doom his malicious prosecution claim. Instead, the Court should have asked whether Thomas was subsequently prosecuted without probable cause. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him . . . without probable cause.").

As the District of Arizona has explained:

> [A] malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, . . . probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking.

*Donahoe v. Arpaio*, 986 F. Supp. 2d 1091 (D. Ariz. Dec. 5, 2013) (emphasis in original).

Accordingly, Thomas' Motion to Reconsider is GRANTED in PART as it relates to this determination, and the Court now reconsiders the merits of Thomas' malicious prosecution claim.

To prevail on a malicious prosecution claim brought under §1983, Thomas must show that (1) the defendants prosecuted him with malice, (2) the defendants lacked probable cause, (3) the prosecution was done for the purposes of denying equal protection or other constitutional rights and (4) that the underlying criminal case was terminated in Thomas' favor. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066, 1068 (9th Cir. 2004). Malicious prosecution claims are cognizable against police officers and other investigating officials in some instances, particularly where the officer maliciously or recklessly makes false reports to the prosecuting authority. *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007).

Here, even if the Court assumes the first factor is met, the same evidence and analysis that supported a finding of probable cause to arrest Thomas for hit and run also supports a finding of probable cause to charge Thomas with felony aggravated assault.

Idaho Code Section 18-901 "defines assault in two, alternative ways." *Ward v. United States*, No. 1:11-CR-00142-EJL-1, 2017 WL 2216394, at *10 (D. Idaho May 18, 2017). These are:

> (a) An unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another; or
>
> (b) An intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent.

Idaho Code § 18-901.

Idaho Code Section 18-905 "defines aggravated assault in three, alternative ways." *Ward*, 2017 WL 2216394, at *10. An aggravated assault is an assault "(a) With a deadly weapon or instrument without intent to kill; or (b) By any means or force likely to produce great bodily harm. [;or] (c) With any vitriol, corrosive acid, or a caustic chemical of any kind. Idaho Code § 18-905.

At the outset, the Court notes that S.K.'s allegation that Thomas purposely struck him with his vehicle could clearly be considered an "unlawful attempt . . . to commit a violent injury on the person of another." Likewise, attempting to strike another person with a motor vehicle may constitute aggravated assault. *See State v. Detwiler*, 2015 Ida. App. Unpub. LEXIS 125, *8-10 (Idaho Ct. App. March 18, 2015). Clearly a motor vehicle can be used as a deadly weapon, and at the very least, striking someone with a vehicle could be considered a "force likely to produce great bodily harm." The Court also finds that S.K.'s allegation that Thomas followed closely behind him, and then rapidly accelerated just prior to striking his back tire could reasonably suggest Thomas intentionally struck S.K.

Accordingly, the Court must simply determine whether there was probable cause to believe S.K's allegations were true. The Court's prior analysis (Dkt. 70, at 9-13) remains relevant to this question, and the Court now incorporates that analysis by reference here (but applied to the crime of aggravated assault). Likewise, the Court incorporates by reference its above discussion regarding Thomas' Motion to Reconsider its decision regarding probable cause to arrest.

After considering all of the evidence known to Akers and Doug Abenroth (the prosecutor) at the time Thomas with charged with aggravated assault, as well as all potentially exculpatory evidence and alibis, the Court finds that the same facts and analysis that supported a finding of probable cause to arrest Thomas for misdemeanor hit and run also support filing charges (and prosecuting Thomas) for aggravated assault.

Further, the Court also finds that the prosecutor acted independently when he determined that probable cause existed. This is important because even if the Court had found that Akers sought to maliciously prosecute Thomas, summary judgment may still be proper if the Court finds the prosecutor acted independently in determining that probable cause existed. *See Beck*, 527 F.3d at 862 ("A prosecutor's independent judgment may break the chain of causation between the unconstitutional actions of other officials and the harm suffered by a constitutional tort plaintiff."). "[T]he prosecutor's independent decision can be a superseding or intervening cause of a constitutional tort plaintiff's injury, precluding suit against the officials who made an arrest or procured a prosecution." *Id.*

In the Ninth Circuit, a presumption exists "that the prosecutor filing [a criminal] complaint exercised independent judgment in determining that probable cause for an accused's arrest exist[ed], thereby breaking the chain of causation between an arrest and prosecution and immunizing investigating officers . . . from damages suffered after the complaint was filed." *Id.* (internal citations and punctuation omitted).[1]

---

[1] The plaintiff in Beck brought a "false arrest" claim. However, the Ninth Circuit explained that the presumption of prosecutorial independence set forth in *Smiddy I*, has been applied in both false arrest and malicious prosecution cases, and the distinction makes no analytical difference. *See Beck*, 527 F.3d at 861 n.7.

This presumption "may be rebutted if the plaintiff shows that the independence of the prosecutor's judgment has been compromised." *Id.* (citing *Smiddy I*, 665 F.2d at 266-67). The Ninth Circuit has provided examples of circumstances in which the presumption will be considered rebutted, however, the list is illustrative, rather than exhaustive. *Id.* These examples include "situations in which the prosecutor was pressured by police or was given false information, the police act[ed] maliciously or with reckless disregard for the rights of an arrested person, the prosecutor relied on the police investigation and arrest when he filed the complaint instead of making an independent judgment on the existence of probable cause for the arrest, or the officers otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Beck*, 527 F.3d at 862-63 (internal quotation marks and citations omitted). "Once 'the plaintiff has introduced evidence to rebut the presumption, the burden remains on the defendant to prove that an independent intervening cause cuts off his tort liability.'" *Id.* at 863 (quoting *Smiddy I*, 665 F.2d at 267).

Here, Thomas has failed to rebut the presumption of prosecutorial independence. He claims that Akers "fabricate[d] some evidence and bur[ied] exculpatory evidence . . . . falsely swore that both S.K. and Pavlesen said that they saw Mr. Thomas drive away . . . at 45-50 MPH, which they both flatly denied . . . [and] deliberately withheld information from the prosecutor in order to obtain probable cause approval from the prosecutor." Dkt. 24, at 12-13. The Court finds these arguments unconvincing. The claim that S.K. and Pavlesen "flatly denied" seeing Thomas drive away misconstrues their statements and disregards the fact that Akers' original version of events remains largely consistent with the testimony

that S.K. and Pavlesen provided at more recent depositions.

Thomas' claim that Akers deliberately withheld information and buried exculpatory evidence is also unavailing. Thomas is particularly concerned with Akers' statement to fellow officers (captured by the body camera) that nobody else was in Thomas' truck at the time of the incident, despite Thomas—at the time of his arrest—telling him he had a witness. While Akers contends that he did not understand Thomas to mean a witness was actually in the car with him at the time of the event, this misunderstanding is immaterial as it appears any confusion on this point was resolved by January 3, 2017, when prosecutor Doug Abenroth reviewed the Charge Request and supporting documents submitted by Akers. Thomas' witness, Cole Blauer, submitted his written statement on January 2, 2017, the day before Abenroth decided to charge Thomas with felony aggravated assault. Abenroth himself maintains that he independently determined that there was probable cause to bring that charge, and Thomas has failed to show otherwise. Accordingly, the Court once again GRANTS Defendants' Motions for Summary Judgment on this claim.

### 3. *Unreasonable detention without probable cause determination*

In his Motion for Reconsideration, Thomas (for the first time) contends that his rights were violated because he did not receive a judicial determination of probable cause within 48 hours of his arrest. This claim was not contained in Thomas' Complaint, nor was it argued in the parties' briefing at the summary judgment stage. In fact, this issue was not discussed at all until the Court raised it *sua sponte* at oral argument. Regardless, Thomas cannot use a Motion for Reconsideration to assert a claim that he never brought in the first place. *See Riley v. Tallerico*, 2017 U.S. Dist. LEXIS 71487, at *3 ("A motion for

reconsideration is not the appropriate way to add . . . a new claim to a complaint. If Plaintiff wishes to add additional factual allegations and a [new] claim . . . to his complaint, he needs to file a motion for leave to amend his complaint.). Accordingly, his Motion is DENIED in PART as it relates to this request.

### 4. *Plaintiff's Fourteenth Amendment Claim*

Thomas concedes that "[t]he Court correctly noted in its [order] that Plaintiff in his summary judgment response did not address this 14th amendment claim that he raised in his complaint. Although the Court may have the authority to deem it waived, it is not required to do so." Dkt. 71, at 20. Thus, Thomas asks the Court to reconsider its holding that Thomas waived his Fourteenth Amendment Claim.

The Court declines to do so. As already noted, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll*, 342 F.3d at 945. Here, Thomas concedes that his summary judgment response did not address his 14th amendment claim. By failing to do so, the Court correctly held that he had waived the claim. Thus, Thomas' Motion for Reconsideration is DENIED in PART as it relates to his Fourteenth Amendment Claim.

### 5. *Plaintiff's First Amendment Retaliation Claim*

Akers recently filed a Motion to Reconsider based on the United States Supreme Court's decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). Dkt. 82. In *Nieves*, the Supreme Court held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." 139 S. Ct. at 1724. This holding abrogates the validity of *Ford v. Yakima*, 706 F.3d 1188 (9th Cir. 2013), upon which this Court's

analysis previously relied, allowing Thomas' First Amendment retaliation claim to survive summary judgment. Dkt. 70.

As stated above, a plaintiff alleging a retaliatory arrest claim must "plead and prove the absence of probable cause for the arrest." *Nieves*, 139 S. Ct. at 1724. The Supreme Court explained further that the absence of probable cause will "generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* This is because "probable cause speaks to the objective reasonableness of an arrest." *Id.*

The Supreme Court did identify a narrow exception to this rule in *Nieves*. It explained that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727.

Since the Court has determined probable cause existed for Thomas' arrest, Thomas cannot prevail on his First Amendment retaliation claim unless the exception set forth in *Nieves* applies. As will be explained more fully below, the Court will reopen discovery for ninety (90) days on this limited issue. As such, the Court STAYS Akers' Motion for Reconsideration for ninety-days as well.[2] At the close of this ninety-day discovery period, Thomas must file a supplemental response to Akers' Motion for Reconsideration (not exceeding twenty (20) pages) presenting any evidence that suggests the *Nieves* exception

---

[2] The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-707 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). This same principle grants the Court broad discretion to stay individual motions.

should apply. Defendants (including Cassia County and Jay Heward) will then have fourteen (14) days to reply to this supplemental response (not to exceed ten (10) pages each).

### 6. Plaintiff's Second Amendment Retaliation Claim

As the Court explained in its prior order, case law regarding Second Amendment retaliation claims is sparse and thus drawing from First Amendment retaliation cases is appropriate. Dkt. 70, at 21-22. As a result, the Court analyzed Thomas' Second Amendment retaliation claim under a standard adapted from the Ninth Circuit's approach to First Amendment retaliation claims. *Id.* at 21-25. Because this First Amendment retaliation standard has now been abrogated by *Nieves*, Akers argues that the Court should apply the *Nieves* analysis to Thomas' Second Amendment retaliatory arrest claim as well. Akers contends that, in light of *Nieves*, a probable cause finding should defeat a claim for retaliatory arrest "for the exercise of any constitutional right." Dkt. 82, at 4.

Although *Nieves* dealt with a First Amendment retaliatory arrest claim, the same logic, analysis, and principles apply to a Second Amendment retaliatory arrest claim as well. The Supreme Court used broad language applicable to any retaliatory arrest claim when it said "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." 139 S. Ct. at 1724.

There are also important policy considerations that apply equally well to both First and Second Amendment retaliation claims. In *Nieves*, the Supreme Court explained that in retaliatory arrest cases, it is "particularly difficult to determine whether the adverse government action was caused by the officer's malice or the plaintiff's potentially criminal

conduct." *Id.* Obviously, a subjective inquiry into the mental state of an arresting officer is problematic. *Id.* at 1725. There are also "overwhelming litigation risks" and the Supreme Court "generally review[s] [police officer] conduct under objective standards of reasonableness" to "ensure that officers may go about their work without undue apprehension of being sued." *Id.*

Based on the similar legal standards that apply to both First and Second Amendment retaliation claim, as well as policy concerns that apply equally well to both situations, the Court intends to apply the *Nieves* holding to the merits of Thomas' Second Amendment retaliation claim.

However, as just noted, the Court will reopen discovery for ninety (90) days on the limited issue of whether evidence exists that triggers the *Nieves* exception. Once this discovery window has closed, and the parties have filed their supplemental briefing, the Court will address the merits of Akers' Motion for Reconsideration.

### 7. *Section 1983 Claims against Cassia County*

Thomas brought federal claims against Cassia County and Sherriff Jay Heward. The Court ultimately granted summary judgment in favor of the Defendants on these claims. Thomas now asks the Court to reconsider its dismissal of his *Monell* claim against Cassia County (based upon Sherriff Heward's alleged ratification of Akers' conduct). However, Thomas has not presented any new arguments that warrant reconsideration.

Although ratification is ordinarily a question for the jury, "as with any jury question, a plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred." *Christi v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999). "To show

ratification a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Id.* at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). The Court already determined that no reasonable juror could find that Sherriff Heward ratified Akers' alleged misconduct, and it stands by that ruling today.

Accordingly, Thomas' Motion for Reconsideration is DENIED in PART as it relates to this request.

### 8. ITCA claim against Akers

Thomas asks the Court to clarify that Thomas' claims brought under the Idaho Tort Claims Act ("ITCA") against Akers are not dismissed on summary judgment. The Court takes this opportunity to clarify and explain that it properly dismissed the ITCA claims against Akers.

"The ITCA establishes that governmental entities are subject to liability for their own negligent or wrongful acts, and those of their employees who were acting within the course and scope of their employment." *Hoffer v. City of Boise,* 257 P.3d 1226, 1228 (Idaho 2011). However, the ITCA statute provides that neither "[a] governmental entity" nor "its employees while acting within the course and scope of their employment and without malice or criminal intent shall be liable for" certain claims, including false imprisonment, false arrest, malicious prosecution, and abuse of process. Idaho Code § 6–904(3) (2010).

In ITCA context, "malice" has been defined as "the intentional commission of a wrongful or unlawful act without legal justification or excuse, whether or not the injury was intended." *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016). Likewise, "criminal

intent" means "the intentional commission of what the person knows to be a crime." *Id.*

Thus, if an employee of a governmental entity, acting within the course and scope of his employment, intentionally commits a crime or a wrongful or unlawful act without legal justification or excuse, section 6–904(3) will not shield him.

Here, Thomas contends that Akers acted with malice. Dkt. 52, at 16. He bases his contention on the same evidence used to support the claims the Court has just thoroughly examined. *Id.* There is no need for the Court to regurgitate that analysis here. Suffice it to say Akers did not commit a crime, nor did he commit a wrongful or unlawful act without legal justification or excuse because there was probable cause for Thomas' arrest and detention. Thus, Akers did not act with malice.

Even if the Court were to find that Akers acted with malice, such a finding would not solidify Akers' liability. All it would do is remove the immunity barrier between Thomas and Akers. The ITCA is not itself a separate cause of action, but a mechanism that allows a plaintiff to bring a cause of action against an otherwise immune governmental entity. Idaho Code § 6–903 (2010). To maintain an ITCA claim, a plaintiff must assert a cause of action cognizable under Idaho law. *Id.*

Here, as the Court has previously explained, all Thomas' state claims substantively fall short. With no underlying causes of action, the Court must dismiss the ITCA claims against Akers. Though Thomas' First and Second Amendment claims survived, he has not alleged that he can bring these claims under Idaho law. Even if he were to make that allegation, however, "no Idaho authority suggests the existence of statutory or direct causes of action for violations of the Idaho Constitution." *Campbell v. City of Boise*, 345 Fed.

Appx. 299, 300 (9th Cir. 2009) ("To prevail . . . Campbell would have had to convince the Idaho courts to recognize, for the first time, either a direct cause of action for constitutional violations or an unprecedented reading of the Idaho Tort Claims Act."). Thus, even if Akers had acted with malice, the Court finds there is no basis for a valid ITCA claim against him. Accordingly, Thomas' Motion for Reconsideration is DENIED in PART as it relates to this request.

*9. ITCA claim against the County*

Thomas correctly points out that the Court mistakenly relied on Idaho Code section 6-903(3) when considering his ITCA claim. As noted by Thomas, the Idaho Supreme Court's decision in *Hoffer* abrogated their holding in *Sprague v. City of Burley*, 710 P.2d 566 (1985), upon which this Court relied. Accordingly, the Court GRANTS in PART Thomas' Motion for Reconsideration, and will now reconsider his ITCA claim under the correct standard.

Rather than looking to Idaho Code section 6-903(3), the Court should have looked to section 6-904. Regardless, summary judgment is still proper. In *Hoffer*, the Idaho Supreme Court explained:

> [T]he ITCA also expressly exempts certain causes of action from the general rule that the entity is subject to liability. . . . Relevant here is I.C. § 6-904(3). That section states: "A governmental entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which . . . [a]rises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." The plain language of the first clause of that section exempts governmental entities from liability for the torts it lists, whether or not there has been an allegation of malice or criminal intent.

*Hoffer*, 257 P.3d at 1228. *See also Bates v. 3B Detention Center*, Case No. 4:14-cv-359-BLW, 2016 WL 1755404 at *3-4 (D. Idaho May 2, 2016) ("The result of this interpretation is that Idaho governmental entities ha[ve] complete immunity for the listed torts even if their employees committed the tort with malice or criminal intent.").

Thus, even if the Court allowed Thomas' relevant claims to proceed, the ITCA expressly excludes governmental entities from liability for these torts, whether there have been allegations of malice or not. Accordingly, the Court once again GRANTS Defendants' Motion for Summary Judgment on Thomas' ITCA claims.

## B. **Motion for Discovery (Dkt. 85)**

In light of the exception set forth in *Nieves*,[3] Thomas asks the Court to reopen discovery to determine if the exception applies in this case.

Once the deadline for completing discovery set forth in the Case Management Order has passed, a party must show good cause to justify reopening discovery. Fed. R. Civ. P. 16(b). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992) (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted."

---

[3] As discussed above, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves,*139 S. Ct. at 1727.

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation and internal quotation marks omitted). "[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," but the Court should focus its inquiry 'upon the moving party's reasons for seeking modification." *Johnson*, 975 F.2d at 609.

> Thomas argues that good cause exists here, because:

> [The] *Nieves* "no-probable-cause requirement" and its exception are, of course, brand new to constitutional law and Section 1983. As such, [Thomas] had no reason to believe that he would be required to prove that "he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," and therefore had no reason to conduct discovery in that regard.

Dkt. 83, at 6.

In many cases, an intervening change in the law would constitute good cause to reopen discovery. *See Ave. 6e Invs., LLC v. City of Yuma*, 2017 U.S. Dist. LEXIS 179494, at *6 (D. Ariz. Oct. 28, 2017) (indicating that a change in the law may have constituted good cause). Regardless, Defendants argue that the undisputed facts of this case demonstrate that there are no "similarly situated" individuals, and therefore, the *Nieves* exception does not apply.

Defendants seem to argue that another individual would only be "similarly situated," if S.K. also alleged that they hit him on his bike. This view is far too narrow. Instead, the Court deems it proper to look to the actual crime Thomas was arrested for (hit and run). If Thomas can present objective evidence that in other encounters, probable cause existed to arrest others for hit and run yet those individuals were treated differently, the

Nieves exception *may* apply. The Court will make that determination if such evidence is presented. Accordingly, Thomas' Motion to Reopen Discovery is GRANTED. Discovery is only reopened on this narrow issue, and only for a period of ninety (90) days after the entry of this order.

## C. <u>Motion for Entry of Judgment (Dkt. 72)</u>

Rule 54(b) gives the Court discretion to grant a final judgment as to one or more, but fewer than all, claims if "there is no just reason for delay." This inquiry asks whether (1) certification would result in successive appeals on the same facts or legal issues; (2) the adjudicated claims are independent of the remaining claims; (3) future developments in the case might moot the appeal; and (4) delay in the entry of the judgment would cause financial harm. *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878-82 (9th Cir. 2005). "Analyzing a Rule 54(b) judgment requires a pragmatic approach with focus on severability and efficient judicial administration." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1084 (9th Cir. 2010).

In light of this legal standard, and having considered the current state of this case and the arguments of the parties, the Court DENIES Thomas' Motion for Entry of Final Judgment. If Thomas is unable to show the *Nieves* exception applies, summary judgment will be granted on his remaining claims. Allowing him to immediately appeal most of his claims, when his remaining retaliation claims may be ready for trial or appeal within a few months is not efficient judicial administration. However, this denial is WITHOUT PREJUDICE. If Thomas shows the *Nieves* exception does apply, and his retaliation claims

are allowed to proceed, he may once again ask the Court for entry of final judgment on his unsuccessful claims.[4]

## V. ORDER

IT IS HEREBY ORDERED THAT:

1. Thomas' Motion for Reconsideration (Dkt. 71) is GRANTED in PART and DENIED in PART consistent with the above analysis. However, the Court once again GRANTS the Defendants' Motions for Summary Judgment (Dkt. 23; Dkt. 24) on Thomas' malicious prosecution claim and ITCA claims.

2. Thomas' Motion for Entry of Final Judgment (Dkt. 72) is DENIED WITHOUT PREJUDICE.

3. Akers' Motion for Reconsideration (Dkt. 82) is STAYED for ninety (90) days after entry of this order.

4. Thomas' Motion for Discovery (Dkt. 84) is GRANTED. Discovery is reopened for ninety (90) on the limited issue set forth above. At the close of this ninety-day period, Thomas must file a supplemental response to Akers' Motion for Reconsideration (not exceeding twenty pages) presenting any evidence that suggests the *Nieves* exception should apply. Defendants (including Cassia County and Jay Heward) will then have fourteen days to reply to this supplemental

---

[4] The Court does not mean to imply that it will certainly grant a future motion for entry of final judgment. It simply notes that it will consider such a motion in the future.

response (not to exceed ten pages each).[5] The Court will then address Akers'

Motion for Reconsideration.

5. Thomas' Motion Requesting Oral Argument (Dkt. 85) is DENIED.

DATED: October 17, 2019

David C. Nye
Chief U.S. District Court Judge

---

[5] Although Cassia County and Jay Heward technically did not file a motion for reconsideration, they did file a Motion of Supplemental Authority (Dkt. 81) asking the Court to apply *Nieves* to Thomas' First and Second Amendment retaliation claims. As such, the Court will allow them to reply to Thomas' supplemental response as well.