UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK THOMAS,<br><br>                 Plaintiff,<br><br>      vs.<br><br>CASSIA COUNTY, JAY M. HEWARD,<br>and MICHAEL AKERS,<br><br>                 Defendants. | Case No. 4:17-cv-00256-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.  INTRODUCTION

Pending before the Court is Defendant Michael Akers' "Supplemental Brief in Support of Motion for Reconsideration (Dkt. 82)." Dkt. 94. Akers requests the Court to reconsider its previous denial of summary judgment on Thomas' First and Second Amendment retaliation claims against Akers (Dkt. 70) due to an intervening change in the law, *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). Dkt. 82.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will address the motion without oral argument. Dist. Idaho Loc.

Civ. R. 7.1(d)(1)(B).[1] Accordingly, Akers' Motion for Reconsideration (Dkt. 82) is GRANTED.

## II. BACKGROUND

On December 31, 2016, Akers—then a deputy with the Cassia County Police Department—responded to a hit-and-run call in Burley, Idaho, driving to a residence where he interviewed the victim and the victim's grandfather, Harold Povlesen. The victim said that Plaintiff Thomas had followed him on his motorized bicycle and then rapidly accelerated just prior to striking the bicycle's back tire before driving off. The caller's grandfather partially collaborated the victim's story.

Prior to receiving this call, Akers had interacted with Thomas on numerous occasions. Thomas worked as a tow-truck driver and regularly interacted with police officers in that capacity. Thomas also claims that on "several prior occasions," Akers "aggressively confronted" him and told Thomas that it was illegal for him to openly carry a firearm in public. Dkt. 6, at 2–3. On each of these occasions, Akers allegedly required Thomas to remove his firearm and put it away. *Id*. Akers claims he complained to Sherriff Heward regarding these encounters, but Heward did not punish Akers or do anything to correct his behavior.

After speaking with the victim and his grandfather, Akers drove to Thomas' home and was invited inside by Thomas' wife. She informed Akers that Thomas had been home for about fifteen or thirty minutes. When Thomas came out of his bedroom, he told Akers

---

[1] The parties also informally notified the Court that a hearing on this motion was not necessary.

MEMORANDUM DECISION AND ORDER-2

that he had been sleeping for two hours. Akers then asked Thomas about the caller's report and Thomas denied the allegations. Following this denial, Akers stated he was taking Thomas into custody for a "hit and run." Dkt. 38, ex. 15 (body camera footage).

Thomas was taken to Cassia County jail. Immediately following Thomas' arrest, while in the police station, Akers accidentally left his body camera on. This camera captured Akers discussing the arrest with fellow officers. Akers stated to one officer: "Between you me and the walls, I don't like Derek Thomas." Dkt. 38, ex. 15.

 In discussing the proper charge during a telephone conversation with a prosecutor, the camera captured Akers saying, "at a minimum it's a hit and run . . . [but] I'm thinking there is enough for ag[gravated] assault if you think there's enough there." *Id*. Shortly thereafter, Akers said to a fellow officer, "the odds of us getting a conviction out of this are pretty slim. But it would be nice to get a conviction because then we could get his guns. . . . we're always getting reports of him making threats." *Id*.

Cassia County Prosecutor, Douglas Abenroth, reviewed the evidence against Thomas on January 3, 2017. Following his review, he decided to charge Thomas with aggravated assault and to include a deadly weapon enhancement. These charges were later reduced to an infraction for improper equipment, to which Thomas pled guilty.

In this civil suit, Thomas brought claims under 42 U.S.C. § 1983, alleging that Akers violated Thomas' First, Second, Fourth, Fifth, and Fourteenth Amendment rights. Thomas also brought related claims against Defendant Jay M. Heward and Cassia County, as well as claims under the Idaho Tort Claims Act and Idaho common law. Defendants moved for summary judgment. The Court granted Cassia County and Heward's Motion for Summary

MEMORANDUM DECISION AND ORDER-3

Judgment (Dkt. 23), and granted in part, and denied in part Thomas' Motion for Summary Judgment (Dkt. 24), allowing only Thomas' First and Second Amendment Retaliation claims against Akers to survive summary judgment. Dkt. 70.

The Court denied Akers' Motion for Summary Judgment relating to Thomas' First and Second Amendment Retaliation claims against Akers in part because it was concerned by the video evidence that showed Akers stating he did not like Thomas, that he thought the odds of getting a conviction on the aggravated assault charge were "slim," and admitting that he would like to get a felony conviction in order to get Thomas' guns taken away from him. Dkt. 70, at 20. This is all subjective evidence of the officer's intent. Ninth Circuit law at the time of the incident established that "[a]n individual has a right 'to be free from police action motivated by retaliatory animus but for which there was probable cause.'" *Id*. at 18 (quoting *Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006)). More specifically, the Ninth Circuit had held that "a person of ordinary firmness would be chilled from future exercise of his First Amendment rights if he were booked and taken to jail in retaliation for his speech." *Id*. at 19 (quoting *Ford v. Yakima*, 706 F.3d 1188 (9th Cir. 2013)). The Court therefore held, on February 26, 2019, that in light of Akers' statements a genuine issue for trial existed on Thomas' First and Second Amendment claims. A reasonable jury could find that—despite the existence of probable cause—Akers had a retaliatory motive that was a but-for cause of his actions.

On May 30, 2019, Akers filed a Motion to Reconsider based on the United States Supreme Court's decision in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). Dkt. 82. In *Nieves*, the Supreme Court held that a "plaintiff pressing a retaliatory arrest claim must plead and

prove the absence of probable cause for the arrest." 139 S. Ct. at 1724. This holding abrogated the validity of *Ford*, upon which this Court's analysis previously relied in allowing Thomas' First and Second Amendment retaliation claims to survive summary judgment. Dkt. 70. The Court found that Akers had probable cause to arrest Thomas for the hit-and-run. Dkt. 91, at 13 ("[T]he same facts and analysis that supported a finding of probable cause to arrest Thomas for misdemeanor hit and run also support filing charges (and prosecuting Thomas) for aggravated assault."). Nevertheless, the Court stayed its ruling on Akers' motion for reconsideration and reopened discovery for ninety days on the limited issue of whether evidence existed that triggered the exception to the no-probable-cause requirement in *Nieves*. Dkt. 91. *Nieves*, 139 S. Ct. at 1727 ("[T]he no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.").

Upon close of this ninety-day discovery period, Thomas was ordered to file a supplemental response to Akers' Motion for Reconsideration presenting any evidence that suggests the *Nieves* exception should apply. Thomas has done so, and the briefing on this issue is now ripe.

### III.   LEGAL STANDARD

Thomas asks the Court to reconsider its decision under Federal Rule of Civil Procedure 59(e). This Rule does "permit[] a district court to reconsider and amend a previous order," but the Ninth Circuit instructs that the Rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial

resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). "[T]here are four limited grounds upon which" a district court may grant a motion for reconsideration: "(1) the motion is necessary to correct manifest errors of fact or law; (2) the moving party presents newly discovered evidence; (3) reconsideration is necessary to prevent manifest injustice; or (4) there is an intervening change in the law." *Coffelt v. Yordy*, No. 1:16-CV-00190CWD, 2016 WL 9724059, at *1 (D. Idaho Nov. 30, 2016) (citing *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)). Regardless of the standard or rule under which they are brought, "motions for reconsideration are generally disfavored, and may not be used to present new arguments or evidence that could have been raised earlier." *America Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. 2006) (citing *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)).

## A. Qualified Immunity: Clearly Established

Akers first argues in his supplemental briefing, as he did previously in his motion for summary judgment (Dkt. 24-1), that he is entitled to qualified immunity. He contends it was not clearly established by the Supreme Court, at the time of the incident, that individuals have a First Amendment right to be free from retaliatory arrest when such arrest is supported by probable cause. While the Ninth Circuit had established law at the time of the incident that a plaintiff could prevail on a First Amendment retaliatory arrest claim even if probable cause for the arrest existed, *see Ford v. Yakima*, 706 F.3d 1188 (9th Cir. 2013), the Second, Fifth, Seventh, Eighth, and Eleventh Circuits all disagreed, *see Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001); *Mesa v. Prejean*, 543 F.3d 264 (5th Cir.

2008); *Peals v. Terre Haute Police Dept.*, 535 F.3d 621 (7th Cir. 2008); *Peterson v. Kopp*, 754 F.3d 594 (8th Cir. 2014); *Redd v. City of Enterprise*, 140 F.3d 1378 (11th Cir. 1998). Akers predominately relies on *T.S. v. Doe*, 742 F.3d 632 (6th Cir. 2014) to support his position. He asserts that the Sixth Circuit, in *T.S.*, noted that "while there was existing in-circuit precedent at the time of the alleged violation, the circuit split made the officers' belief that their conduct did not in fact violate constitutional rights objectively reasonable." Dkt. 94, at 4 (citing *T.S.*, 742 F.3d at 638).

The Court need not analyze the accuracy of Akers' interpretation of the Sixth Circuit ruling. In the Ninth Circuit, even though "disagreement among circuit courts may imply a legal principle is not 'beyond debate,' and thus not clearly established . . . . '[i]f the right is clearly established by decisional authority of the Supreme Court or of this Circuit, our inquiry should come to an end.'" *Carrillo v. Cty. of Los Angeles*, 798 F.3d 1210, 1222–23 (9th Cir. 2015) (quoting *Hopkins v. Bonvicino,* 573 F.3d 752, 772 (9th Cir. 2009)) (alteration in original) (internal quotation marks omitted). "Only in the absence of binding precedent do we consider other sources of decisional law such as out-of-circuit cases." *Id*. at 1223 (9th Cir. 2015) (citation omitted); *see also Morgan v. Morgensen*, 465 F.3d 1041, 1046 n.2 (9th Cir. 2006), *opinion amended on reh'g*, No. 04-35608, 2006 WL 3437344 (9th Cir. Nov. 30, 2006) (citation omitted) ("[T]he fact that there was a potential circuit split on this issue does not preclude [the Ninth Circuit's] holding that the law was clearly established for the purposes of the § 1983 inquiry."); *Francisco Jose Rivero v. City & Cty. of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002) ("The issue is not what the law was or might have been in other circuits in 1993. It is, rather, what the 'controlling authority in

MEMORANDUM DECISION AND ORDER-7

[the defendants'] jurisdiction[was] at the time of the incident.'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

At the time of the incident, it was clearly established under Ninth Circuit precedent that a retaliatory arrest—even if supported by probable cause—could violate the First Amendment. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Ford*, 706 F.3d 1188. After the incident, the Supreme Court in *Nieves* left in place the law, previously recognized in the Ninth Circuit, that a 42 U.S.C. § 1983 claim could be pursued for arrests supported by probable cause but which violated the First Amendment. In light of this, the Court denies Akers' Motion to Reconsider insomuch that the Court continues to hold that, at the time of the arrest, it was clearly established in Akers' jurisdiction that arresting an individual in retaliation for his speech violates said individual's First Amendment rights. *See Capp v. Cty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019); *Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016).

## B.  Similarly Situated Individuals

The intervening change in the law brought about by *Nieves* is an extraordinary circumstance which justifies the Court's reconsideration of its original ruling that Thomas could go forward with his retaliatory arrest claims. Newly at issue is whether the *Nieves* exception to the "no-probable-cause requirement" in retaliatory arrests applies to Thomas' remaining claims.[2]

---

[2] As for Thomas' Second Amendment claim, the Court is unaware of any authority that has directly stated that *Nieves* applies to such a claim. However, the Court's previous ruling that *Nieves* does so apply remains the Court's conclusion. Dkt. 91, at 18–19 (Although *Nieves* dealt with a First Amendment retaliatory arrest claim, the same logic, analysis, and principles apply to a Second Amendment retaliatory arrest claim as well." (citing *Nieves*, 139 S. Ct. at 1725)).

  1.   *Legal Standard Under Nieves*

In *Nieves*, the plaintiff brought a claim under 42 U.S.C. § 1983 alleging that two officers arrested him in retaliation for his choice not to speak with them and for warning other festival attendees not to speak with them. 139 S. Ct. at 1720–21. The district court granted summary judgment for the officers based on a determination that there was probable cause to make the arrest. *Id.* at 1721. Based on *Ford*, the Ninth Circuit reversed. *Id.* It pointed to the plaintiff's affidavit declaring that one of the officers said, "bet you wish you would have talked to me know," during the arrest. *Id.* The Supreme Court granted certiorari and ultimately reversed and remanded the case. *Id.* at 1728.

In coming to this disposition, the *Nieves* Court established both a general rule and a narrow exception for retaliatory arrest claims. Generally, "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for arrest." *Id.* at 1724. Stated differently, the "presence of probable cause should generally defeat" a retaliatory arrest claim. *Id.* at 1726. This is because police conduct is reviewed under objective standards of reasonableness, and as such, the absence of probable cause will "generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." *Id.* at 1724. As part of this inquiry, "[a] particular officer's state of mind is simply 'irrelevant,' and it provides 'no basis for invalidating an arrest.'" *Id.* at 1725 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004)).

A very "narrow" exception applies, however, in "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at

1727; *see also Lund v. City of Rockford, Illinois*, 956 F.3d 938, 944 (7th Cir. 2020) (noting that the it is "a very narrow exception" and that plaintiffs must show that their "case squeezes through the crack of an opening *Nieves* left ajar"). Under this exception, unless a plaintiff "presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," then his claim must be dismissed due to the objective reasonableness of the probable cause finding. *Nieves*, 139 S. Ct. at 1727. Again, "[b]ecause this inquiry is objective, the statements and motivations of the particular arresting officer are *irrelevant at this stage*." *Id.* (emphasis added).

Several examples etch the fuzzy contours of this exception. *Nieves* itself provided guidance on when evidence is both sufficient and insufficient to meet a plaintiff's required showing. On the facts before it, the *Nieves* Court concluded that the plaintiff's declaration that one of the officers said, "bet you wish you would have talked to me know," during his arrest was not enough to meet the exception—most likely because the officer's subjective intent was irrelevant under the Court's own newly minted rule. *See id.* at 1727–28. As an example of when evidence could be sufficient to meet the exception, the Supreme Court provided a hypothetical case of jaywalking:

> [A]t many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of [constitutional] rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.* at 1727.

Another court in the Ninth Circuit concluded that the evidence was sufficient for the *Nieves* exception to apply when the plaintiffs were arrested for chalking sidewalks. *Ballentine v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01584-APG-EJY, 2020 WL 4925694, at *5 (D. Nev. Aug. 20, 2020). In that case, the plaintiffs put forth evidence that they "attended at least nine chalking protests between 2011 and 2013 where they were not cited for chalking and were not told by law enforcement officers that chalking on a city sidewalk is illegal." They were "first cited two years after they began their chalking protests," but the city attorney "declined to prosecute those citations because he found that sidewalk chalk did not fall within the graffiti statute and he was concerned about First Amendment issues." *Id.* Other individuals not protesting were also chalking at the time of the plaintiffs' arrest, but no evidence existed that those people were arrested. *Id.* The officer did not present any evidence that the police force had "ever arrested anyone besides the plaintiffs for chalking on the sidewalk." *Id.*[3]

### 2.  *Objective Evidence Analysis*

#### a.  Admissibility of Thomas' "Police Records Summary" (Dkt. 95-5)

Under Federal Rule of Evidence 1006, a party "may use a summary . . . to prove the content of voluminous writings . . . that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination . . . by other parties . . . . [a]nd the court may order the proponent to produce them in court." Fed. R. Evid. 1006. Here, Thomas summarizes police records that Defendants provided to him.

---

[3] The Ninth Circuit has not weighed in yet on what comprises sufficient objective evidence.

Dkt. 95-5. Both parties have access to the original documents. Thomas has also, on his own accord, produced the original police records in full to the Court. Dkt. 97.

In his reply, Akers essentially moves for Thomas' "Police Records Summary" (Dkt. 95-5) to be stricken, or at least disregarded, as inadmissible on the grounds that the summary "does not fairly and accurately summarize the records produced by Cassia County." Dkt. 96, at 3. In essence, it appears that Akers primarily objects to Thomas' grouping together offenses that were the bases for arrest and charges that were later added. *Id*.; *see also* Dkt. 96-10 (asserting that "[s]everal of the individual defendants' entries listed by Plaintiff incorrectly indicate that those defendants were arrested on all of the charges listed in the final column"). By doing so, Akers argues Thomas muddies the water and "unfairly suggests that individuals were actually arrested for 'worse' crimes than hit-and-run" and the summary is thus "unfairly confusing and misleading." *Id*. Akers directs the Court's attention to the Declaration of Bruce J. Castleton for a more detailed analysis of the inaccuracies of Thomas' summary (Dkt. 96-10).

The Court has reviewed Castleton's Declaration. The Court is aware of the distinction between charges asserted at the time of the arrest versus those subsequently added but does not find such grouping provides grounds to find the summary inadmissible, particularly as all parties, and the Court, have access to the original underlying police reports. The Court will give Thomas' summary statement the weight it deems appropriate.

   b.   Evidence that Similarly Situated Individuals Who Did Not Engage in Protected Activities Were Not Arrested

To reiterate, the Court has determined probable cause existed for Thomas' hit-and-

run arrest and felony aggravated assault charge. Dkt. 91, at 13. As this is the case, Thomas cannot prevail on his retaliatory arrest claims, unless the narrow exception in *Nieves* applies. That is to say, he must show that police officers that have probable cause to make arrests, "typically exercise their discretion not do so" in this scenario. *Nieves*, 139 S. Ct. at 1727. He must present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* Thomas' discovery to establish evidence sufficient to meet this exception has closed. At this point, it is also necessary to note that it would be improper for the Court to base its decision in any way on the video evidence showing Akers potentially had a motive to chill Thomas from engaging in constitutionally protected activity. As cringeworthy as Akers' comments may be, they go to Akers' state of mind or subjective intent, and thus they are "irrelevant at this stage." *See Nieves*, 139 S. Ct. at 1727 (cleaned up).

Thomas has not carried his burden of establishing that the *Nieves* exception applies in this case. Based on his conducted discovery, Thomas alleges that from 2006 through October 2019, the Cassia County Sheriff's Office ("CCSO") charged a total of 223 adults (excluding Thomas) with misdemeanor hit-and-run under I.C. § 49-1301. Dkt. 95, at 2. Of those, 79 individuals were arrested; 144 were not arrested, but rather cited and released. In other words, 35% of the people charged with misdemeanor hit-and-run were arrested, and 65% were merely cited. Akers points out that, in 2014, 40% of the suspects were arrested, 58% were arrested in 2015, and 47% were arrested in 2016, the year of Thomas's arrest

(50% if Thomas is included).[4]

Viewing these statistics in this broad manner, Thomas has not shown that it was rare for hit-and-run suspects to be arrested so as to trigger the *Nieves* exception, especially where over a third of all suspects were arrested over the thirteen-year period and even higher rates existed in the years leading up to and including the year of his own arrest. In fact, these numbers indicate that there is no typical outcome for misdemeanor hit-and-run situations. Thomas' statistics merely show that he falls into the arrested category rather than the cited-only category.

However, as mentioned, the Court found probable cause for the aggravated assault charge. Thus, the question viewed more narrowly is whether Thomas has made the required showing that a hit-and-run with aggravated felony assault is the type of offense that rarely results in arrest. Among the 223 individuals charged with misdemeanor hit-and-run, 2 were also charged with aggravated assault (excluding Thomas). Significantly, these 2 were both arrested.[5] Thus, both the individuals most similarly situated to Thomas were arrested, which militates against the *Nieves* exception applying here. Unlike in *Ballentine* where no evidence existed that the police force had "ever arrested anyone besides the plaintiffs for

---

[4] These statistics become less favorable for Thomas when the individuals who were solely charged with misdemeanor hit-and-run are excluded. Among the 223 adults charged, 42 individuals received the sole charge of misdemeanor hit-and-run, and 41 of those individuals were not arrested. Dkt. 95-5. So, like Thomas who was charged for a crime in addition to misdemeanor hit-and-run, 181 individuals were charged with misdemeanor hit-and-run and some other crime in the given time period. This means that 78 or 43% of them were arrested, thereby showing that Thomas' case is far from objectively unusual.

[5] To be sure, the other individual had charges beyond hit and run and aggravated assault. The grounds for arrest/charges for the first suspect in Thomas' summary was hit-and-run, aggravated assault, driving without privileges, false information to the police, and a federal border patrol hold. Dkt. 95-5, at 4. The grounds for arrest/charges for the second suspect were hit-and-run, aggravated assault, and driving without privileges. *Id.* Still, these individuals comprise the best comparator evidence Thomas has put forth.

chalking on the sidewalk," 2020 WL 4925694, at *5, there is substantial evidence here that shows CCSO routinely makes arrests for hit and run and aggravated assault. Consequently, this evidence suggests that the very narrow exception in *Nieves* is inapplicable here.

Nor can the Court say otherwise based on the type of crime at issue. Unlike jaywalking and chalking sidewalk, *Nieves*, 139 S. Ct. at 1727; *Ballentine*, 2020 WL 4925694, at *5, aggravated assault and misdemeanor hit-and-run are serious offenses. *Cf. Lund*, 956 F.3d at 947–48 ("Although we might all agree that jaywalking . . . is the type of law-breaking toward which most officers would turn a blind eye, it is less clear that officers routinely give a pass to persons driving motorized vehicles the wrong way on one-way streets, an action that could have fatal consequences."); *Court Pallas v. Accornero*, 2019 WL 3975137, at *5 (N.D. Cal. Aug. 22, 2019) (dismissing the plaintiff's complaint because, among other reasons, the court concluded that the charges of felony assault and misdemeanor battery differ "in kind from the infractions (such as jaywalking) cited in *Nieves*").

Next, Thomas contends that CCSO is unable to identify anyone other than Thomas who it charged with hit-and-run and who CCSO knew had previously lawfully carried a firearm. But this improperly shifts the burden from Thomas to Akers. A finding of probable cause requires Thomas to establish the *Nieves* exception applies here. *Nieves*, 139 S. Ct. at 1727; *see also Richards v. Gelsomino*, 814 F. App'x 607, 611 (D.C. Cir. 2020) (per curiam) (affirming the district court's grant of summary judgment in favor of the defendant because the plaintiff "did not identify any similarly situated persons whom [the defendant] declined to arrest"); *DelPriore v. McClure*, 424 F. Supp. 3d 580, 592 (D. Alaska 2020) (dismissing

the plaintiff's case because the officers had probable cause to arrest the plaintiff and the plaintiff did not present "any evidence that similarly situated individuals were not arrested").

Akers identifies this same point. He asserts that CCSO does not keep records of people charged with I.C. § 49-1301 who previously lawfully carried a firearm. He then argues that the absence of such evidence shows Thomas has not met his burden of presenting objective evidence of retaliation to defeat summary judgment. Dkt. 96, at 6. Akers goes on to point out that Thomas was provided with the names of the individuals CCSO arrested under I.C. § 49-1301. He contends it was Thomas' burden to conduct further discovery into the specific circumstances of such individuals' arrests to determine whether any of them had engaged in protected activity before being arrested and also to submit an affidavit or declaration from one of those persons to support his claim. Thus, although he had an opportunity to do so, Thomas has not established evidence that similarly situated individuals *not engaged* in the same protected activity have not been arrested, as *Nieves* requires.

Finally, after explaining the statistics mentioned above, Thomas states that "he was the only one arrested in retaliation for lawfully exercising his rights." Dkt. 95, at 3. However, Thomas does not rely on an expert witness in coming to his conclusion, and as explained, the statistics do not bare out this conclusion. This conclusory statement simply does not help Thomas. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, the nonmoving party must set forth non-speculative evidence of specific facts, not sweeping conclusory

allegations." (cleaned up)).

In sum, because Thomas has failed to persuade the Court that the *Nieves* exception applies in this case, the Court must dismiss Thomas' remaining claims due to the probable cause found for his hit-and-run arrest and aggravated assault charge. The Court is not insensitive to the concerns raised in the *Nieves* dissenting opinions about the difficulty of establishing this exception. However, the Court is bound to apply the test as articulated by the majority of the Supreme Court. Indeed, it is the pronouncements of the majority that carry the force of law. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1416 (2020) (Kavanaugh, J., concurring) ("[V]ertical stare decisis is absolute . . . . [F]ederal courts have a constitutional obligation to follow a precedent of [the Supreme Court] unless and until it is overruled by [the Supreme Court]." (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989))). Thomas has not satisfied the *Nieves* test. Accordingly, the Court GRANTS Akers' Motion for Reconsideration, and Thomas' two retaliatory arrest claims against Akers are dismissed.

## IV.   ORDER

IT IS HEREBY ORDERED:

1. Akers' Motion for Reconsideration (Dkt. 94) is **GRANTED**.

2. Thomas' two remaining claims are **DISMISSED**.

DATED: September 29, 2020

David C. Nye
Chief U.S. District Court Judge